# EXHIBIT B

Case 1:08-cr-00826-RMB    Document 110-3    Filed 09/22/09    Page 2 of 16

# ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996

*P.L. 104–132, see page 110 Stat. 1214*

DATES OF CONSIDERATION AND PASSAGE

*Senate: May 25, 26, June 5, 6, 7, 1995; April 17, 1996*

*House: March 13, 14, 1995; April 18, 1996*

**Cong. Record Vol. 141 (1995)**
**Cong. Record Vol. 142 (1996)**

**House Conference Report No. 104–518, Apr. 15, 1996**
**[To accompany S. 735]**

## RELATED REPORTS

House Report (Judiciary Committee)
No. 104–383, Dec. 5, 1995
[To accompany H.R. 1710]

House Report (Judiciary Committee)
No. 104–23, Feb. 8, 1995
[To accompany H.R. 729]

House Report (Judiciary Committee)
No. 104–22, Feb. 6, 1995
[To accompany H.R. 668]

House Report (Judiciary Committee)
No. 104–16, Feb. 2, 1995
[To accompany H.R. 665]

Senate Report (Judiciary Committee)
No. 104–179, Dec. 6, 1995
[To accompany H.R. 665]

*No Senate of House Report was submitted with this legislation. A Related Report (this page) is set out below. The House Conference Report (page 944) and the President's Signing Statement (page 961–1) follow.*

## SENATE REPORT NO. 104–179

[page 1]

The Committee on the Judiciary, to which was referred the bill (H.R. 665) to control crime by mandatory victim restitution, having considered the same, reports favorably thereon, with an amend-

ANT

ment in the nature of as amended, do pass.

I. Purpose ...................
II. Legislative history .....
III. Section summary .......
IV. Discussion ...................
V. Committee action .......
VI. Regulatory impact stat
VII. Cost estimate .............
VIII. Additional views of Ser
IX. Minority views of Sena
X. Changes in existing lav

\* \*

\* \*

The purpose of H.R. tice in Federal criminal ants to pay full resti crimes. Crimes for wh clude crimes of violenc crimes committed by fi tain drug crimes. Addit establishing one set of ders in Federal crimina for the collection of unt the collection of unpaid these procedures.

This legislation is nec is recognized, and thal due. It is also necessa damage caused by the c as well as to society. F an existing patchwork c tion under various Fec procedure.

II

Congress first enacte ute in 1982 as a part (Public Law 97–291). I ate, the Committee on t

The principle of tually every formal ture and every tim

924

CTIVE DEATH
1996

*tat. 1214*

) **Passage**

*)5; April 17, 1996*

*ril 18, 1996*

1995)
1996)

518, Apr. 15, 1996
35]

**rs**

mmittee)
995
710]

mmittee)
)95
29]

mmittee)
)95
68]

mmittee)
)95
65]

mmittee)
995
65]

*ed with this legislation.*
*low. The House Confer-*
*Signing Statement (page*

**104-179**

ich was referred the bill
rictim restitution, having
hereon, with an amend-

## ANTITERRORISM ACT OF 1996
P.L. 104-132

ment in the nature of a substitute, and recommends that the bill, as amended, do pass.

### CONTENTS

|      |                                         | Page |
|------|-----------------------------------------|------|
| I.   | Purpose                                 | 12   |
| II.  | Legislative history                     | 12   |
| III. | Section summary                         | 14   |
| IV.  | Discussion                              | 17   |
| V.   | Committee action                        | 25   |
| VI.  | Regulatory impact statement             | 25   |
| VII. | Cost estimate                           | 26   |
| VIII.| Additional views of Senator Leahy       | 28   |
| IX.  | Minority views of Senator Simon         | 30   |
| X.   | Changes in existing law                 | 31   |

*       *       *       *       *

[page 12]

*       *       *       *       *

### I. PURPOSE

The purpose of H.R. 665 is to improve the administration of justice in Federal criminal cases by requiring Federal criminal defendants to pay full restitution to the identifiable victims of their crimes. Crimes for which mandatory restitution would apply include crimes of violence, felony crimes against property (including crimes committed by fraud or deceit), product tampering, and certain drug crimes. Additionally, the bill has the further purposes of establishing one set of procedures for the issuance of restitution orders in Federal criminal cases, and of consolidating the procedures for the collection of unpaid restitution with existing procedures for the collection of unpaid fines, while at the same time strengthening these procedures.

This legislation is needed to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due. It is also necessary to ensure that the offender realizes the damage caused by the offense and pays the debt owed to the victim as well as to society. Finally, this legislation is needed to replace an existing patchwork of different rules governing orders of restitution under various Federal criminal statutes with one consistent procedure.

### II. LEGISLATIVE HISTORY

Congress first enacted a general Federal victim restitution statute in 1982 as a part of the Victim and Witness Protection Act (Public Law 97-291). In reporting this legislation to the full Senate, the Committee on the Judiciary noted:

The principle of restitution is an integral part of virtually every formal system of criminal justice, of every culture and every time. It holds that, whatever else the sanc-

925

## LEGISLATIVE HISTORY
### SENATE REPORT NO. 104-179

[page 13]

tioning power of society does to punish its wrongdoers, it should also ensure that the wrongdoer is required to the degree possible to restore the victim to his or her prior state of well-being. (S. Rept. 97–532 at 30 (Judiciary Committee), Aug. 19, 1982 (to accompany S. 2420).)

The 1982 act sought to remedy the unfortunate situation noted by the committee that "restitution * * * lost its priority status in the sentencing procedures of our federal courts long ago. * * * As a matter of practice, [restitution] is infrequently used and indifferently enforced." (Id.)

The 1982 act for the first time provided Federal courts with the authority to order payments of restitution independently of a sentence of probation, and required the court to state its reasons for the record in instances in which restitution is not ordered.

The legislation enacted in 1982 was the subject of modest amendments in the years since, but remains substantially intact as enacted 13 years ago. Unfortunately, however, while significant strides have been made since 1982 toward a more victim-centered justice system, much progress remains to be made in the area of victim restitution. According to the 1994 Annual Report of the United States Sentencing Commission, during fiscal year 1994, Federal courts ordered restitution in only 20.2 percent of criminal cases. (United States Sentencing Commission Annual Report 1994, table 22.) Data from the same report show that restitution was ordered in only 27.9 percent of all murders, 28.2 percent of all kidnapppings, 55.2 percent of all robberies, and 12.5 percent of all sexual-abuse cases.

Language substantially similar to H.R. 665 has passed the Senate on three previous occasions: as section 2003 of S. 1241 in the 101st Congress, section 2003 of H.R. 3371 in the 101st Congress, and as section 902 of H.R. 3355 in the 103rd Congress. However, this language was never approved in legislation presented to the President.

In 1994, Congress enacted the Violence Against Women Act (VAWA) as title IV of the Violent Crime Control and Law Enforcement Act of 1994 (Public Law 103–322). Included in VAWA were provisions requiring mandatory restitution in Federal cases to victims of sexual abuse, sexual exploitation and other abuse of children, and domestic violence.

As a result of the 1982 act, as amended, and the enactment of VAWA, Federal law now contains parallel victim restitution provisions that are mandatory for some, but not all, offenses and that provide different procedures for the issuance of the restitution order. H.R. 665, which passed the House of Representatives on February 7, 1995, by a vote of 431 to 0, would make restitution mandatory in all Federal criminal cases, but would not address the inconsistencies arising from various congressional enactments since 1982. The committee amendment is intended first, to require that full restitution be ordered to the victims of all covered offenses in which there is an identifiable victim, second, to establish one set of procedures for the issuance of restitution orders in Federal criminal cases, and third, to consolidate the procedures for the collection of unpaid restitution with existing procedures for the collec-

ANTI

tion of unpaid fines, wl procedures.

II

*Section 1*

Short title. Entitles th

*Section 2*

Table of contents.

*Title I*

Restitution.
*Section 101.*—Order o: of title 18 to conform wit
*Section 102.*—Conditic restitution order, payme of the court of a matei cumstances affecting hi: assessments, mandatory
*Section 103.*—Mandat to title 18, making res fenses.

Requires that res and to other parties Restitutable item: cal care and thera penses incurred dur ecution proceedings. Covered offenses fraud crimes under drug crimes. For m able victim would l pecuniary loss. Adc restitution if the ni to make restitution complex factual issi process that outwei
*Section 104.*—Order Amends other restitutio the new section 3663A sections include section sions of the Violence Ag 2259, and 2264). No ch: quired under the Violen the availability of emoti
*Section 105.*—Procedu tion order. This section : sistent set of procedures ders of restitution in cri:

provides for comp the victims' losses a court to enter a rest provides for order

ORY
-179

sh its wrongdoers, it
er is required to the
to his or her prior
t 30 (Judiciary Com-
. 2420).)

ortunate situation noted
ost its priority status in
ourts long ago. * * * As
iently used and indiffer-

Federal courts with the
independently of a sen-
to state its reasons for
is not ordered.
subject of modest amend-
bstantially intact as en-
iever, while significant
a more victim-centered
be made in the area of
Annual Report of the
uring fiscal year 1994,
20.2 percent of criminal
on Annual Report 1994,
that restitution was or-
rs, 28.2 percent of all
, and 12.5 percent of all

65 has passed the Sen-
2003 of S. 1241 in the
in the 101st Congress,
3rd Congress. However,
ilation presented to the

e Against Women Act
introl and Law Enforce-
ncluded in VAWA were
in Federal cases to vic-
nd other abuse of chil-

, and the enactment of
victim restitution provi-
t all, offenses and that
ince of the restitution
of Representatives on
would make restitution
t would not address the
sional enactments since
ed first, to require that
all covered offenses in
id, to establish one set
ion orders in Federal
procedures for the col-
ocedures for the collec-

tion of unpaid fines, while at the same time strengthening these procedures.

## III. SECTION SUMMARY

*Section 1*

Short title. Entitles the bill "Victims Justice Act of 1995."

*Section 2*

Table of contents.

*Title I*

Restitution.

*Section 101.*—Order of restitution. Amends sentencing provisions of title 18 to conform with mandatory restitution requirements.

*Section 102.*—Conditions of probation. Makes compliance with a restitution order, payment of a special assessment, and notification of the court of a material change in a defendant's economic circumstances affecting his or her ability to pay fines, restitution or assessments, mandatory conditions of probation.

*Section 103.*—Mandatory restitution. Enacts a new section 3663A to title 18, making restitution mandatory for certain federal offenses.

Requires that restitution be made to all identified victims, and to other parties agreed to in any plea agreement.

Restitutable items would include property or its value, medical care and therapy, lost income, funeral expenses, and expenses incurred during participation in investigation and prosecution proceedings.

Covered offenses would include violent crimes, property and fraud crimes under title 18, product tampering, and certain drug crimes. For mandatory restitution to apply, an identifiable victim would have to have suffered a physical injury or pecuniary loss. Additionally, the court could decline to order restitution if the number of identifiable victims is so large as to make restitution impracticable, or if the determination of complex factual issues would place burdens on the sentencing process that outweigh the need for restitution.

*Section 104.*—Order of restitution to victims of other crimes. Amends other restitution sections in Title 18 to conform them with the new section 3663A and the redrafted section 3664. Amended sections include section 3663 and the mandatory restitution provisions of the Violence Against Women Act (18 U.S.C. sections 2248, 2259, and 2264). No change is made to the scope of restitution required under the Violence Against Women Act provisions, including the availability of emotional damages.

*Section 105.*—Procedure for issuance and enforcement of restitution order. This section rewrites 18 U.S.C. 3664, to provide one consistent set of procedures for the issuance and enforcement of all orders of restitution in criminal cases. In major part, this section:

provides for compilation and consideration of information on the victims' losses and the defendants' assets sufficient for the court to enter a restitution order;

provides for orders of full restitution to all victims;

927

**LEGISLATIVE HISTORY**
SENATE REPORT NO. 104–179
[page 15]

provides for a schedule of nominal payments in cases where the defendant's economic circumstances do not presently allow the defendant to pay the full amount of restitution ordered;

specifies that restitution can be ordered in a single lump-sum payment, installment payments, in-kind payments, or a combination of installment payments and in-kind payments;

specifies that victims may not be required to participate in any phase of a restitution order;

gives the court the discretion either to make multiple defendants jointly and severally liable for payment of the full restitution award, or to apportion the restitution order among the various defendants;

provides that if more than one victim has sustained a loss, the court may order different payment schedules with respect to each victim based on various factors, and provides that restitution owed to individual victims shall be paid before restitution owed to the United States;

clarifies that if a victim receives, or is entitled to receive, compensation from some other source (including insurance proceeds), the court must order that, after the victim's losses have been fully satisfied, restitution be payed to the person providing that compensation;

provides that the defendant has the duty to report any material changes in the defendant's economic circumstances that might affect the defendant's ability to pay restitution, and permits the restitution order's payment schedule to be modified on the basis of the changed circumstances;

provides for the enforcement and collection of a restitution order in the same manner as fines under Title 18; and

provides that any substantial resources acquired by an incarcerated defendant owing restitution shall be applied to restitution still owed.

*Section 106.*—Procedure. Establishes procedures for the collection of restitution orders, and consolidates these procedures with existing procedures for the collection of federal criminal fines. Strengthens the collection provisions for restitution and fines. In major part, this section:

(a) Amends Rule 32(b) of the Federal Rules of Criminal Procedure to require that a presentence report, or other report sufficient to allow the court to formulate a restitution order, be made whenever restitution is to be ordered;

(b) Adds restitution to existing provisions governing the imposition of a fine in federal criminal cases (18 U.S.C. 3572);

allows the courts to give priority to the imposition of fines over orders of restitution only when the United States is the party receiving restitution;

includes restitution in provisions governing payment of fines and monetary penalties, replaces requirement that a payment schedule not exceed 5 years with a requirement that it reflect the shortest time possible, and permits the court to adjust the payment schedule for fines based on changes in the defendant's economic circumstances, similar to the discretion given the court regarding restitution payment schedules in new section 3664(k);

928

## LEGISLATIVE HISTORY
### SENATE REPORT NO. 104-179
#### [page 17]

*Section 108.*—Instruction to Sentencing Commission. Requires the Sentencing Commission to amend the Sentencing Guidelines to reflect mandatory restitution provisions.

*Section 109.*—Justice Department guidelines. Requires the Attorney General to amend U.S. attorney guidelines to encourage U.S. attorneys to consider the restitution needs of all an offender's victims when negotiating a plea agreement, and to ensure the full enforcement of restitution orders.

*Section 110.*—Special assessments on convicted persons. Doubles the special assessments on persons convicted in certain federal cases. This provision has passed the Senate as a part of the Comprehensive Terrorism Prevention Act of 1995 (S. 735).

*Section 111.*—Crime Victims Fund. Bars crime victim fund payments to Federal convicts delinquent in their fine or restitution payments, and provides that victim assistance is not to be counted as income for the purpose of determining eligibility for Federal benefits.

*Section 112.*—Victims of Terrorism Act. Authorizes supplemental grants through the States to compensate and assist victims of terrorism and mass violence and makes improvements to the Crime Victims Fund. This provision has also passed the Senate as a part of S. 735.

*Section 113.*—Effective date. Provides effective dates for the provisions of Title I.

### Title II

Severability.

*Section 201.*—Severability. Provides that, in the event that any of the provisions of the act is found unconstitutional, the remainder of the act remains in force.

*Section 202.*—Study and report. Requires the Attorney General and the Director of the Administrative Office of the United States Courts to jointly study and report to the Judiciary Committees of the House and Senate on the disbursement of funds paid out of the Crime Victims Fund and on the impact of the amendments made by this act on the Crime Victims Fund.

### IV. DISCUSSION

#### A. IN GENERAL

The economic and personal costs of crime to the American people are enormous. According to the Bureau of Justice Statistics, each year 25 percent of U.S. households are victimized by one or more crimes. Approximately 2 million people in the United States are injured each year as a result of violent crime. Approximately 51 percent of those injured require some level of medical attention, and 23 percent require treatment at a hospital, with an average stay of 9 days.

The true cost to the victims and survivors of crime, particularly violent crime, is incalculable. Even so, where known, the direct costs of crime to its victims are staggering. In 1991, the direct economic costs of personal and household crime was estimated at $19.1 billion, a figure that does not include the costs associated with homicides or costs attributed to the criminal justice system.

930

AN

According to recently
vestigation, two-thir
against a residence,
cans lost $3.6 billion

Robberies accounte
victims in 1994. Yet,
not adequately conve
ed in its recently rel
"[t]he impact of this
ured in terms of mon
volves force or the th
personal injury."

It is essential that
pact that crime has
sure that offender be
the essence of the co
H.R. 665, the Victims

During consideratic
mony from the Feder
have on the criminal
mittee, the Chair of
Conference of the Ur
eral defendants are
unlikely to be able tc
mandatory victim res
crease in compensatic

The committee, w
views, believes that t
even nominal restitut
well as the potential
to be accountable for

The committee is n
of this legislation. In
has attempted to redu
tion to those Federal
fers physical injury or
intends that its ame
and enforcing an orde
the costs associated w

B. MAND/

It is the committee
all identifiable victims
the sentencing phase
determination of facts

To that end, the co
titution requirements
violence, as defined i
a felony against prope
title 18 committed by
with consumer produc
under part D of the
seq.).

ag Commission. Requires
: Sentencing Guidelines to

elines. Requires the Attor-
delines to encourage U.S.
ls of all an offender's vic-
and to ensure the full en-

onvicted persons. Doubles
victed in certain federal
ate as a part of the Com-
395 (S. 735).
rs crime victim fund pay-
. their fine or restitution
tance is not to be counted
eligibility for Federal ben-

Authorizes supplemental
and assist victims of ter-
provements to the Crime
ssed the Senate as a part

ffective dates for the pro-

at, in the event that any
stitutional, the remainder

res the Attorney General
ffice of the United States
Judiciary Committees of
t of funds paid out of the
of the amendments made.

e to the American people
f Justice Statistics, each
ictimized by one or more
the United States are in-
e. Approximately 51 per-
f medical attention, and
al, with an average stay

ors of crime, particularly
where known, the direct
. In 1991, the direct eco-
crime was estimated at
ude the costs associated
criminal justice system.

## ANTITERRORISM ACT OF 1996
### P.L. 104-132
#### [page 18]

According to recently released data from the Federal Bureau of Investigation, two-thirds of all burglaries in 1994 were perpetrated against a residence, with an average loss of $1,296. In total, Americans lost $3.6 billion to burglars in 1994.

Robberies accounted for an estimated $496 million in losses to victims in 1994. Yet, as with other violent crimes, this figure does not adequately convey the victims' losses. As the FBI cogently stated in its recently released report *Crime in the United States, 1994,* "[t]he impact of this violent crime on its victims cannot be measured in terms of monetary loss alone. * * * [T]he crime always involves force or the threat of force, and many victims suffer serious personal injury."

It is essential that the criminal justice system recognize the impact that crime has on the victim, and, to the extent possible, ensure that offender be held accountable to repay these costs. This is the essence of the committee's intent in favorably reporting the bill H.R. 665, the Victims Justice Act of 1995.

During consideration of this legislation, the committee took testimony from the Federal judiciary on the impact the legislation may have on the criminal justice system. In testimony before the committee, the Chair of the Criminal Law Committee of the Judicial Conference of the United States noted that 85 percent of all Federal defendants are indigent at the time of sentencing, and thus unlikely to be able to pay restitution. According to this testimony, mandatory victim restitution "will not lead to any appreciable increase in compensation to victims of crime."

The committee, while respectful of the Judicial Conference's views, believes that this position underestimates the benefits that even nominal restitution payments have for the victim of crime, as well as the potential penalogical benefits of requiring the offender to be accountable for the harm caused to the victim.

The committee is not unmindful of the costs to the justice system of this legislation. In its amendment to H.R. 665, the Committee has attempted to reduce these costs by limiting mandatory restitution to those Federal offenses in which an identifiable victim suffers physical injury or a pecuniary loss. Additionally, the committee intends that its amendment streamlining the process for issuing and enforcing an order of restitution will have a salutary effect on the costs associated with victim restitution.

### B. MANDATORY RESTITUTION—SECTION 103

It is the committee's intent that courts order full restitution to all identifiable victims of covered offenses, while guaranteeing that the sentencing phase of criminal trials do not become fora for the determination of facts and issues better suited to civil proceedings.

To that end, the committee amendment restricts mandatory restitution requirements to criminal cases involving either a crime of violence, as defined in section 16 of title 18, United States Code; a felony against property under title 18, including any felony under title 18 committed by fraud or deceit; a crime involving tampering with consumer products under section 1365 of title 18, and offenses under part D of the Controlled Substances Act (21 U.S.C. 841 et seq.).

931

## LEGISLATIVE HISTORY
### SENATE REPORT NO. 104-179

[page 27]

In addition, one of the act's changes to the Crime Victims Fund would result in direct spending. Under current law, portions of grants awarded from the Crime Victims Fund that remain unobligated at the end of the fiscal year after the year in which the grant was awarded are returned to the general fund of the Treasury. Over the past five years, an average of about $1 million annually has been returned for this reason. Under H.R. 665, any amounts that remain unobligated at the end of the second fiscal year after the year in which the grant was awarded would remain in the Crime Victims Fund and would be available for obligation. As a result, amounts that would have been returned to the Treasury would instead be spent from the Crime Victims Fund in later years. We estimate that this additional direct spending would be less than $500,000 in fiscal year 1996 and about $1 million annually thereafter.

Enacting H.R. 665 would result in no costs to state or local governments.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contacts are Mark Grabowicz, and for governmental receipts, Stephanie Weiner.

Sincerely,

PAUL VAN DE WATER
(For June E. O'Neill, Director).

[page 28]

## VIII. ADDITIONAL VIEWS OF SENATOR LEAHY

When the bomb exploded outside the Murrah Federal Building in Oklahoma City earlier this year, my thoughts and prayers, and I suspect that those of all Americans, turned immediately to the victims of this horrendous act. It is my hope that through this substitute we will proceed to enact a series of improvements in our growing body of law recognizing the rights and needs of victims of crime. We can do more to see that victims of crime, including terrorism, are treated with dignity and assisted and compensated with government help.

Section 112 of the substitute incorporates the Victims of Terrorism Act, which will accomplish a number of worthwhile objectives. It includes a proposal I made to increase the availability of assistance to victims of terrorism and mass violence here at home. We in this country have been shielded from much of the terrorism perpetrated abroad. That sense of security has been shaken by the bombing in Oklahoma City, the destruction at the World Trade Center in New York, and recent assaults upon the White House. I, therefore, proposed that we allow additional flexibility in targeting resources to victims of terrorism and mass violence and the trauma and devastation that they cause.

Thus, the substitute includes provisions to make funds available through supplemental grants to the States to assist and compensate our neighbors who are victims of terrorism and mass violence, which incidents might otherwise overwhelm the resources of a State's crime victims compensation program or its victims assistance services. I understand assistance efforts to aid those who were

940

cordingly, the substitute includes as section 110 a provision doubling the special assessments levied under the Victims of Crime Act against those convicted of federal felonies in order to assist all, victims of crime.

I do not think that $100 to assist crime victims is too much for those individuals convicted of a Federal felony to contribute to help crime victims. I do not think that $400 is too much to insist that corporations convicted of a Federal felony contribute. Accordingly, the substitute would raise these to be the minimum level of assessment against those convicted of crime.

While we have made progress over the last 15 years in recognizing crime victims' rights and providing much-needed assistance, we still have more to do. I am proud to have played a role in passage of the Victims and Witness Protection Act of 1982, the Victims of Crime Act of 1984, the Victims' Rights and Restitution Act of 1990 and the victims provisions included in such measures as the Violent Crime Control and Law Enforcement Act of 1994. I look forward to prompt consideration and Senate passage of this substitute, including the Victims of Terrorism Act.

PATRICK LEAHY.

[page 30]

## IX. MINORITY VIEWS OF SENATOR SIMON

Victim restitution is an important part of our criminal justice system. It can help make the victim of a crime "whole", while holding the offender accountable for the damage caused by his or her crime. While I certainly applaud the good intentions of its sponsors, I do not support this "mandatory victim restitution" proposal. This bill would replace the current system, which allows judges to order victim restitution in certain types of cases, with an inflexible mandate which requires restitution be ordered in such cases.

In general, I do not support placing mandates on judges. I oppose mandatory minimum sentences because they substitute inflexible formulas, which cannot account for individual circumstances, for judicial discretion. Similarly, the "mandatory victim restitution" proposal will require judges to order restitution in cases where they know it can never be paid. The Judicial Conference of the United States reports that 85 percent of criminal defendants are indigent at the time of their conviction. And yet, according to the U.S. Sentencing Commission's 1994 Annual Report, judges order a fine or restitution in 37.7 percent of cases sentenced under the guidelines. These statistics lead me to believe that Federal judges are already doing a good job of ordering restitution when practicable.

I respect the motives of this proposal's sponsors, and agree that we must do all that is practicable to help victims of crime. However, rather than placing another mandate on judges, which seems unlikely to increase the amount of restitution actually paid to victims, we should instead consider alternative *permissive* forms of restitution which would enhance the current system. My colleagues, Senators Kyl and Feinstein, have proposed an amendment which would allow judges to order those convicted of drug trafficking offenses where there is no identifiable victim to pay restitution

942

ANTITE

HOUSE CONFERENCE REPORT NO. 104-518

\*        \*        \*        \*        \*

[page 111]

## JOINT EXPLANATORY STATEMENT OF THE COMMITTEE OF CONFERENCE

The managers on the part of the Senate and the House at the conference on the disagreeing votes of the two Houses on the bill (S. 735), to prevent and punish terrorism, submit the following joint statement to the Senate and the House in explanation of the effect of the action agreed upon by the managers and recommended in the accompanying conference report.

### TITLE I—HABEAS CORPUS REFORM

Sections 101–108—Sections 601–608 of the Senate bill and sections 901–908 of the House amendment are identical, and therefor were not modified by the conference committee.

This title incorporates reforms to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases. It sets a one year limitation on an application for a habeas writ and revises the procedures for consideration of a writ in federal court. It provides for the exhaustion of state remedies and requires deference to the determinations of state courts that are neither "contrary to," nor an "unreasonable application of," clearly established federal law.

The revision in capital habeas practice also sets a time limit within which the district court must act on a writ, and provides the government with the right to seek a writ of mandamus if the district court refuses to act within the allotted time period. Successive petitions must be approved by a panel of the court of appeals and are limited to those petitions that contain newly discovered evidence that would seriously undermine the jury's verdict or that involve new constitutional rights that have been retroactively applied by the Supreme Court.

In capital cases, procedures are established for the appointment of counsel, conduct of evidentiary hearings, and the application of the procedures to state unitary review systems. Courts are directed to give habeas petitions in capital cases priority status and to decide those petitions within specified time periods. These procedures apply both to state and federal capital cases.

### TITLE II—JUSTICE FOR VICTIMS

#### Subtitle A—Mandatory Victim Restitution

Sections 201–211—Senate recedes to section 806 of the House amendment, with modification. The modification includes the Senate amendments to the bill H.R. 665, passed by the Senate on December 22, 1995, together with perfecting amendments. The managers intend that the Report of the Senate Committee on the Judi-

ciary to accompany H.R. ( legislative history for this

Subtitle B—Jurisdictio

Section 221—House s with modifications. This as state sponsors of terro ministration Act of 1979 terrorist acts. It permits money damages for perso and arising from terrorist ted, against American ci state's territory, and for s state involved has refuse

Subtitle C—As

This subtitle incorpo and the House amendme rorism.

Section 232—Victims ate Title X, with modifi on a similar provision ir 665. This provision aut States to compensate an lence.

Section 233—Compe cedes to House section 8 section 902.

Section 234—Crime This provision consis to H.R. 665, passed by t prohibits the payment o individual who is delinq monetary penalty impos federal court. To ensure tim assistance program: wrongfully denied assist until such time as a cri managers do not intend development of the track

Section 235—Closed tims of crime. Senate re ment, with a modificati when the venue of a cri closed circuit television for the benefit of victim ensure that the court re tempt penalties for viola the signal, removes th funds, and sunsets the eral courts of any rules icy addressed by this se provision in any way el

944

. It does not apply to offenses involv-
on requires the remainder of the sen-
ı reenters the United States illegally.
des to House amendment section 677.

local law enforcement officials to ar-
who have previously been deported for
can be taken into federal custody by

ndment section 601 recedes to Senate
enhances the ability of the United
ns.

des to House amendment section 665:
ʒ of an deportable alien to collaterally
ʒr in a pending criminal case.

ʒdes to House amendment section 663.
procedures for deportation of deport-
aliens.

des to Senate section 302. This section
l to extradite persons who are not U.S.
nent residents to countries with which
ave an extradition treaty.

BIOLOGICAL, AND CHEMICAL
IS RESTRICTIONS

A—Nuclear Materials

ʒe amendment title IV recedes to Sen-
ʒ provide federal law enforcement offi-
ʒmbat the threat of nuclear contamina-
may result from illegal possession of,
ıaterials, including nuclear by-products
ʒrials.

edes to House amendment section 306
tion requires the Attorney General, to-
f Defense, to undertake a study of the
s, explosives, and other terrorist type
enals and report findings to Congress
te of enactment.

ʒgical Weapons Restrictions

edes to House amendment title XI with
addresses the threat of the misuse or
tentially deadly human pathogenic sub-
reat, and conspiracy to the prohibition
using biological weapons, and expands
weapons to include certain human
authorizes the Secretary of Health and
the transfer of certain biological agents
ıanagers intend that in promulgating
lated biological agents pursuant to this

952

## Subtitle C—Chemical Weapons Restrictions

Section 521—House recedes to Senate section 908 with modi-
fication. This subtitle criminalizes the use of chemical weapons
within the United States, or against Americans outside of the Unit-
ed States. Additionally, this section provides for a study of the need
for a training center to enhance law enforcement response capabili-
ties to chemical and biological emergencies. Senate section 908 also
provided additional authority for military assistance to law enforce-
ment in chemical and biological emergencies. In light of the enact-
ment of section 378 of the National Defense Authorization Act for
Fiscal Year 1996 (P.L. 104–106), the managers have omitted this
provision.

## TITLE VI—IMPLEMENTATION OF PLASTIC EXPLOSIVES CONVENTION

Sections 601–606—House amendment sections 501–505 recede
to Senate sections 701–705 and 707. This title fulfills the obliga-
tions of the United States to implement the Convention on the
Marking of Plastic Explosives for the Purpose of Detection, entered
into at Montreal in 1991 in the wake of the bombing of Pan Am
flight 103. This title requires that detectant agents be placed in all
plastic explosives manufactured in, imported into, or exported from
the United States, and provides criminal penalties for violations.

## TITLE VII—CRIMINAL LAW MODIFICATIONS TO COUNTER TERRORISM

### Subtitle A—Crimes and Penalties

Section 701—House amendment section 202 recedes to Senate
section 101. This section amends the explosives chapter of Title 18
to provide that a conspiracy to commit a crime under that chapter
is punishable by the same maximum penalty as that applicable to
the substantive offense that formed the object of the conspiracy.

Section 702—Senate section 102 recedes to House amendment
section 104 with modifications. This section creates a new federal
criminal prohibition on acts of terrorism transcending national
boundaries. It will be a violation of this provision to kill, kidnap,
maim, or seriously injure any person in the United States, or to
create substantial risk of injury to any person by damaging or de-
stroying property in the United States. There will be federal juris-
diction over the offense if the offender uses facilities of interstate
commerce, the offense interferes with interstate commerce, the vic-
tim is the United States or any employee of the United States, or
the offense takes place in U.S. territorial jurisdiction, and at least
part of the conduct occurred outside of the United States.

Section 703—House section 104 recedes to Senate section
102(f). This section expands the categories of property in federal ju-
risdiction the destruction or damage of which is criminally punish-
able by the United States.

Section 704—Senate section 103 recedes to House section 105.
This section amends Section 956 of title 18, United States Code,

953

## LEGISLATIVE HISTORY
### HOUSE CONF. REP. NO. 104-518
#### [page 121]

which currently only prohibits conspiracies within the United States to injure property overseas.

This amendment will criminalize conspiracies to harm people and property outside the United States, so long as at least one was present, and one act in furtherance of the conspiracy occurred, within the jurisdiction of the United States.

The penalties for offenses under section 956 will range from life imprisonment for conspiracies to murder or kidnap; 35 years for conspiracy to maim; and 25 years for conspiring to damage property.

Section 705—House recedes to Senate section 104. This section increases penalties for a series of federal crimes, including amending the law against maiming and disfiguring to include torture and punishing an attempt to violate this section by up to $10,000 in fines and/or 10 years imprisonment, and adding protection to armed services personnel.

Section 706—Senate section 105 recedes to House amendment section 205. This section above and creates a criminal prohibition on the transfer of explosive materials, "knowing or having reasonable cause to believe" they will be used to commit a crime of violence or drug trafficking offense. Crimes committed under this section will be subject to the same penalties as are provided for a first conviction of section 844(h) of title 18, United States Code, which is a mandatory minimum 5 year term of imprisonment.

Section 707—Senate section 106 recedes to House amendment section 111. This section amends current section 842(h) of title 18, United States Code, to include the possession of and pledging, or acceptance as security for a loan, any stolen explosive materials that have moved in, or constitute any part of interstate or foreign commerce. Currently, the law only prohibits the transport, shipment, concealment, storage, bartering, sale, and disposal of such stolen explosive material.

Section 708—House amendment section 201 recedes to Senate section 107 with modifications. This section increases penalty for arson or explosives crimes against property, with mandatory minimums for these offenses. This section also extends the statute of limitations for arson offenses from seven to ten years.

Section 709—Senate section 901 recedes to House amendment section 804. This section requires the Attorney General to undertake a 180 day study of publicly available literature and material instructing how to make bombs, destructive devices, or weapons of mass destruction. The study is to include a review of print, electronic, and film media, in this regard. This provision requires the Attorney General to determine the extent to which the availability of this material has been used in terrorism incidents, and the likelihood of its use for such activity in the future.

This section also mandates that the Attorney General review existing federal laws having application to this material and the need or utility of any additional statutory coverage. Furthermore, the Attorney General must render a legal analysis of the protection provided this material by the First Amendment.

The Attorney General is required to submit a report of findings to Congress and make that report available to the public.

954

ies within the United

piracies to harm people
long as at least one was
he conspiracy occurred,

on 956 will range from
ler or kidnap; 35 years
: conspiring to damage

section 104. This section
rimes, including amend-
g to include torture and
on by up to $10,000 in
d adding protection to

es to House amendment
s a criminal prohibition
owing or having reason-
· commit a crime of vio-
mmitted under this sec-
s are provided for a first
ited States Code, which
prisonment.
es to House amendment
ection 842(h) of title 18,
sion of and pledging, or
olen explosive materials
t of interstate or foreign
oits the transport, ship-
le, and disposal of such

n 201 recedes to Senate
on increases penalty for
y, with mandatory mini-
o extends the statute of
ten years.
es to House amendment
orney General to under-
: literature and material
e devices, or weapons of
a review of print, elec-
is provision requires the
to which the availability
a incidents, and the like-
ure.
Attorney General review
o this material and the
· coverage. Furthermore,
analysis of the protection
nent.
bmit a report of findings
e to the public.

## ANTITERRORISM ACT OF 1996
P.L. 104–132

[page 122]

### Subtitle B—Criminal Procedures

Section 721—Senate section 621 recedes to House amendment section 106. This section clarifies United States jurisdiction for specific terrorism crimes occurring overseas. The Aircraft Piracy statute is amended to provide extraterritorial federal jurisdiction for aircraft piracy if a U.S. national was on the plane; if the perpetrator is a U.S. national; or, if the offender is found in the U.S. after committing the crime. The United States has a legitimate interest in punishing anyone who injures a U.S. national, and also retains an interest in punishing its own citizens for crimes committed against foreign nations, or foreign nationals.

This section also clarifies U.S. extraterritorial jurisdiction over the offenses of aircraft destruction, murder of, and assaults or threats against of foreign officials or internationally protected persons, biological weapons offenses, and violence at international airports if the offense occurred outside the U.S., so long as the victim is an "internationally protected person," (as defined by Section 1116(b)(4) of title 18; if the victim is a representative, officer, employee, or agent of the United States; if the offender is a U.S. national; or, if the offender is later found in the U.S.

Section 722—Senate recedes to House amendment section 110. This section provides clarifying language to section 2280(b)(1)(A) of title 18, United States Code, which establishes federal jurisdiction over violent activities occurring on the high seas.

Section 723—Senate section 627 recedes to House amendment section 203. This section will make it a crime to conspire to commit any offense under the specifically listed sections of title 18, United States Code found in this provision. Adding the conspiracy language to these criminal statutes will enable the government to prosecute and punish those offenses appropriately. Without a conspiracy element in the statutory language, the government must rely on title 18, United States Code, section 371, to prosecute conspiracies generally. Section 371 only carries a five year statutory maximum penalty, even if the underlying offense requires a much higher penalty. This section corrects this anomaly. This section provides clarifying language to Section 2280(b)(1)(A) of title 18, United States Code, which establishes federal jurisdiction over violent activities occurring on the high seas.

Section 724—Senate section 628 recedes to House amendment section 109 with modification. This section amends section 844(e) of title 18, United States Code. Currently, Section 844(e) prohibits threats of violence against persons or property, whether true or false, if the threat is made through the mail or any other instrument of commerce. This new section replaces "commerce" with the words "interstate or foreign commerce." It also expands the statute's reach to any threat that is "in or affects interstate or foreign commerce."

Section 725—Senate section 623 recedes to House amendment section 107 with modifications. This section criminalizes a threat to use a weapon of mass destruction, extends the prohibition to the use of such weapons by U.S. nationals overseas, and clarifies that any chemical weapon is included in the definition of weapon of mass destruction or destructive device.

955

## LEGISLATIVE HISTORY
HOUSE CONF. REP. NO. 104-518

[page 123]

Section 726—House amendment section 108 recedes to Senate section 625. This section adds certain terrorism offenses to the money laundering statute.

Section 727—Senate section 626 recedes to House amendment section 101 with modifications. Subsection (a) of this section amends Section 1114 of title 18, United States Code, to allow federal prosecution for the murder or attempted murder of all officers and employees of the United States government while that person was engaged in or because of that person's official duties. It also covers the murder or attempted murder of any other person assisting the United States officer, or employee, in the performance of his or her duties, or on account of the assistance provided. The penalties for this offense are the same as those provided under sections 1111, 1112, and 1113 of title 18, United States Code.

Subsection (b) amends section 115(a)(2) of title 18, United States Code, by including within that statute's reach threats "to assault, kidnap, or murder, any person who formerly served" as a federal law enforcement officer or agent in retaliation for the exercise of his official duties. The statute currently provides this protection to currently employed federal law enforcement officers, and the family members of former law enforcement personnel. Curiously, former federal law enforcement officers are left out of the statute's coverage. This subsection of the bill corrects that omission.

This section also clarifies the use of a deadly or dangerous weapon in an assault on a federal employee or officer includes the use of a weapon that fails to cause death or danger due to a defective component.

Section 728—Senate recedes to House amendment title XIV. This section adds multiple killings or attempted killings to the list of aggravating factors for the imposition of the death penalty in federal criminal cases.

Section 729—Senate recedes to House amendment section 310. This section clarifies that the time period in which a detention hearing must be held does not include weekends and legal holidays.

Section 730—Senate recedes to House amendment sections 206 and 207. This section gives the U.S. Sentencing Commission amendment authority to expand the scope of its Chapter 3 enhancement for "international terrorism offenses" under the U.S. Sentencing Guidelines, to apply only to federal crimes of terrorism as defined in section 2332b(g). In amendments to the Sentencing Guidelines that become effective November 1, 1996, a new provision substantially increases jail time for offenses committed in connection with a crime of international terrorism. This section of the bill will make that new provision applicable only to those specifically listed federal crimes of terrorism, upon conviction of those crimes with the necessary motivational element to be established at the sentencing phase of the prosecution, without having to wait until November 1996 for the change to become law.

Section 731—Senate recedes to House amendment section 302. Subsection (a)(3) of this section excludes from the definition of "electronic communication" under the wiretap statute "information stored in a communications system used for the electronic storage and transfer of funds." This will allow law enforcement to obtain

956

ANTITF

such bank records throug
court order procedure, wi
purposes.

Subsection (b) elimin
definition of "radio comn
the general public." This
negated the need to exem
missions, i.e., scanners, (
tended to preclude the n
phone conversations occu
erate through radio sign
public. "Electronic comn
separately covered by the

Section 732—House a
Senate sections 708 and
rects the Treasury Secret
the feasibility of tagging
the purpose of tracing t
after an explosion. The si
imposing controls on the
chemicals. Black or smok
The section requires inp
ters in the Treasury Sec
also requires the Treasu
censing requirements ap
chase and use of commer
cial high explosives" is c
"detonators, detonating ca
ing agents, and boosters.
Secretary to report the r
if deemed necessary, wi
Secretary is authorized to
clusion of tracing taggar
will not endanger human
enforcement, and are co
pursuant to this authorit
act within 270 days of the
eral Register.

TITLE VIII—ASSI*

Subtitle /

Section 801—Senate
with modification. This p
for the Departments of J
the Department of State
poses of law enforcement
Section 802—Senate
This section expresses t
chases made with funds a
ican-made.
Section 803—Senate
section 303, with modifica
General and the Treasur

**RY**
·518

n 108 recedes to Senate
rrorism offenses to the

es to House amendment
:on (a) of this section
:ates Code, to allow fed-
ed murder of all officers
iment while that person
's official duties. It also
any other person assist-
:, in the performance of
tance provided. The pen-
provided under sections
ites Code.
)(2) of title 18, United
te's reach threats "to as-
> formerly served" as a
retaliation for the exer-
itly provides this protec-
rcement officers, and the
it personnel. Curiously,
: left out of the statute's
s that omission.
a deadly or dangerous
.e or officer includes the
r danger due to a defec-

: amendment title XIV
npted killings to the list
of the death penalty in

amendment section 310.
d in which a detention
eekends and legal holi-

amendment sections 206
Sentencing Commission
·e of its Chapter 3 en-
fenses" under the U.S.
eral crimes of terrorism
ients to the Sentencing
r 1, 1996, a new provi-
enses committed in con-
·ism. This section of the
le only to those specifi-
pon conviction of those
ement to be established
without having to wait
me law.
amendment section 302.
from the definition of
:ap statute "information
ir the electronic storage
y enforcement to obtain

such bank records through the usual grand jury subpoena, or other court order procedure, without requiring a wiretap order for these purposes.

Subsection (b) eliminates "electronic communication" from the definition of "radio communications that are readily accessible to the general public." This inclusion of "electronic communication" negated the need to exempt from the wiretap coverage radio transmissions, i.e., scanners, CBs, and Ham radio signals. It is not intended to preclude the need for a title III wiretap order for telephone conversations occurring over cordless telephones, which operate through radio signals not readily available to the general public. "Electronic communications" are already specifically and separately covered by the wiretap statutes.

Section 732—House amendment sections 301 and 801 recede to Senate sections 708 and 905, with modifications. This section directs the Treasury Secretary to provide to the Congress a study of the feasibility of tagging explosives and precursor chemicals, for the purpose of tracing the explosives back to the manufacturer after an explosion. The study would also evaluate the feasibility of imposing controls on the sale and distribution of certain of those chemicals. Black or smokeless powder is excluded from the study. The section requires input from non-profit fertilizer research centers in the Treasury Secretary's conduct of the study. The section also requires the Treasury Secretary to conduct a study of the licensing requirements applicable in the various states for the purchase and use of commercial high explosives. The phrase "commercial high explosives" is defined, by way of illustration, to include "detonators, detonating cards, dynamite, water gel, emulsion, blasting agents, and boosters." This section also requires the Treasury Secretary to report the results of the study to Congress, together, if deemed necessary, with recommendations for regulation. The Secretary is authorized to promulgate regulations requiring the inclusion of tracing taggants in explosive materials if the taggants will not endanger human life or safety, will substantially assist law enforcement, and are cost-effective. The regulations promulgated pursuant to this authority shall go into effect if Congress does not act within 270 days of the publication of the regulations in the Federal Register.

### TITLE VIII—ASSISTANCE TO LAW ENFORCEMENT

#### Subtitle A—Resources and Security

Section 801—Senate recedes to House amendment section 807, with modification. This provision provides clear statutory authority for the Departments of Justice and Treasury, in consultation with the Department of State, to use appropriated funds for the purposes of law enforcement training activities overseas.

Section 802—Senate recedes to House amendment section 704. This section expresses the sense of the Congress that any purchases made with funds authorized under this Act should be American-made.

Section 803—Senate section 513 recedes to House amendment section 303, with modification. This section authorizes the Attorney General and the Treasury Secretary to ban parking or vending ad-